And our last case for this morning is United States v. Tyrone Johnson. All right, can I see both counsels so we can proceed? Mr. Chipkey? Good morning, it's Shafae. Thank you, Your Honor. May it please the court, my name is Imani Shafae and I represent Tyrone Johnson in this matter. All right, the district court ruled that Mr. Johnson's encounter with police officers with consensual is incorrect. Mr. Johnson was seized in this case. Here, in this case, on the night in November, Mr. Johnson pulled into a parking spot next to a curb. There was a car parked directly in front of him in the curb to the passenger side. Less than a minute later, a police car pulled parallel right next to Mr. Johnson's car. They were close enough to Mr. Johnson so that they could question him without raising their voices. Mr. Johnson, at the moment he was blocked in by the police officers, prevented from going forward by the car parked directly in front of him, and boxed in on the passenger side, was seized by the police officers in this matter. Mr. Johnson's stop was not consensual. It was a seizure. If this court has held, particularly in United States v. Smith, that where police officers block in a prevented individual or defendant from proceeding, that encounter, that stop, would be deemed a seizure. In Smith, the defendant was walking through an alley and was prevented from going forward by police officers on their bicycles. But in Mr. Shafae in Smith, we have to look at the totality of the circumstances. It wasn't just the fact that he was blocked by the bicycles. It was the fact that the officers were holding their guns. They asked him a series of questions. They didn't say who they were. It was all of the factors that aren't present here. I think it's undisputed on the record that the officers pulled up next to him. No sirens were on. No guns were drawn. They asked him a couple of questions. There's a difference in the facts there. I think there is a difference, Your Honor. But I believe there are similarities as well. The officers here were in a squad car. They didn't introduce themselves immediately. They questioned Mr. Johnson, asking him whether he had a driver's license or not. Now, it is true that all the facts that were present in Smith weren't present here. But when we look at the totality of the circumstances in Mr. Johnson's case, he was still, none the less, prevented from leaving. Or I should say, a reasonable person, where they are boxed in by police officers at night and questioned, would not believe they were free to leave. And we believe that that was a seizure that took place, and the reasonable person would not feel that they could leave. In addition, in the United States, Mr. Burton was a similar issue. I think when we look at Smith and Burton, I think both of those cases involved are bicycles. When we're here, Mr. Johnson was boxed in by the police vehicle. And as the court in Smith stated, the fact that an individual can maybe extricate themselves from a situation, or reverse course, does not mean a seizure didn't take place. And if I can just kind of go back, and I think kind of address your Honor's question, just kind of the differences between Smith and our case here. The court's correct that police officers had their hands on their guns, and they asked or questioned Mr. Smith a little bit more than the questions that were posed to Mr. Johnson. But this isn't a case like Thornton, United States v. Thornton, where police officers were just asking routine questions and didn't block the path of the individual, didn't block the defendant's path. And in Thornton, the court held those kinds of encounters or situations are consensual, because the defendant in Thornton or individual path wasn't being blocked, and they were free to ignore the officer's questions and proceed with their day. That wasn't a situation here, where the officers were just coming up to Mr. Smith, I mean Mr. Johnson, and asking him routine questions. His path was blocked, and he was prevented from leaving in an ordinary manner. If there are no further questions, I reserve the rest of my time for rebuttal. Thank you. That's fine, thank you. Mr. Mott. May it please the court, the district court correctly held that the initial encounter between the defendant and the officers on the night of his arrest was consensual in nature, did not rise the level of the seizure under the fourth amendment. The defendant chose to park behind a parked car and next to a hydrant. Officers then approached a single vehicle and stopped alongside the defendant. They did not turn on their sirens, they did not turn on their spotlight, they did not turn off their engine or ask the defendant to turn off his. They also chose not to park behind the defendant's vehicle, which they easily could have done, and which would have actually impeded the defendant's exit from the scene. The officer did not initially get out of their vehicle, and instead simply rolled down their windows and asked two simple questions. Are you aware you're next to a hydrant, and do you have a driver's license? As soon as the defendant responded that he did not have a license, the officers had probable cause to seize the defendant, and as soon as the officers began to step out of their vehicle, the defendant fled in reverse. Immediately through the path that would have been obstructed, had the officers chosen to park their car behind the defendant. So the question is whether a seizure occurred in the moments between when the officers pulled alongside the defendant, through the time the officers asked those two questions. And the legal standard here is whether the officer's actions in pulling alongside him and asking two questions would have communicated to a reasonable person that he was not free to terminate the encounter, and that reasonable person is presumed to be an innocent person, not someone who has just committed a violation. If you look at the actions of the officers from the perspective of a reasonable person who had just parked behind that parked car, and look at put that place them on a spectrum from the least coercive to the most coercive possible available to the officers, I think that you would have to place them toward the least coercive end of the spectrum, because that person would have observed again, the officers chose not to park behind him, which would have blocked him in. The officers chose not to activate their emergency lights. They chose not to turn on the spotlight. They chose not to get out of their car initially. And instead, they chose to just roll down their windows and casually ask questions from a seated position, which to a reasonable person would communicate an intent to engage in consensual conversation. The fact that the first question was whether the defendant was aware he was next to a hydrant, I think would further support that perception by a reasonable person that their interest was in the potential public safety hazard of being next to a hydrant, and that he was being invited to potentially move his vehicle. Looking at the cases cited by the parties, these facts certainly fit within the category of encounters the court has found to be consensual. In all the cases cited by the defendant, officers used either multiple vehicles or multiple bicycles, often in coordination with their own bodies, to position themselves in a way that would hinder the defendant's movement, and that would appear designed to do so, and thus communicate that the defendant was not free to terminate the encounter. In contrast, this court has found no seizure occurred in the cases involving officer actions, which were arguably more coercive than those here. In Pavelski, two different police vehicles approached behind the defendant in a parking lot, and officers got out of their car to question the defendant with two vehicles behind them. In Douglas, officers parked 15 to 20 feet nose-to-nose away from the defendant and approached on either side of the vehicle with flashlights on the defendant. Mr. Mott, isn't there a distinction there though with the Douglas case? Because there was no traffic violation. Here, and perhaps you can speak to this, the district judge concluded that a reasonable person in Johnson's position would have felt free to leave the scene by reversing the car. Here though, that reversal would have been the wrong way down a one-way street, and that obviously involves the violation of infraction. Do you I do think that I think that the question here is whether the person would be feel free to terminate the encounter under any circumstances that could have involved asking the officer whether they had to continue the conversation getting out of the car and asking whether they are free to back up their car and move forward in a normal fashion. So I do think that the question is whether under those circumstances he would feel free to terminate the encounter in any way. I do think that the fact that he chose to go in reverse did did tend to show that he felt free to terminate the encounter in that fashion. Thank you. Unless the panel has additional specific questions for the government, we request that the court affirm the district court's judgment. Thank you. Mr. Shafae. Thank you, Your Honor. The officer's conduct of pulling nets to Mr. Johnson did block him in. The government in their argument surmises that if the officers would have parked behind Mr. Johnson, that would have blocked him in or that would have been coercive, but I think the record shows Mr. Johnson would have then been free to just pull off and drive in the right direction down the street. He wouldn't have been blocked in. The officer's actions of pulling up to the side of him and blocking him in did not leave him any recourse to terminate or leave in ordinary manner. In addition to pulling up next to Mr. Johnson and blocking him in, the officers asked two questions, both related to whether a traffic offense. One, whether Mr. Johnson was illegally parked on a hydrant. The second one, whether he was in possession of a valid driver's license. The nature of the officer's positioning of their car, blocking Mr. Johnson in on three sides, and the nature of those questions, we believe, turned this encounter into a seizure and it was not consensual. As Your Honor stated in his question to Mr. Mott, if Mr. Johnson would have just terminated the inquiry or ignored the question, the only way he could have left the situation or the encounter would have been to commit another violation and reverse course. Just for a moment, I'd like to talk about just the cases where there are more than one police officers or where there are more than one police vehicles. I don't think the number of police vehicles or bicycles determines whether a person's seized or not. I think in those cases, I think in Smith and in Burton in particular, yes, those cases involved a number, I think three bicycles in each and prevented Defendant Smith and Burton from proceeding. But it wasn't the number, we believe, the number of vehicles that it was the fact that the individual defendant was blocked in. He was prevented from leaving. And though Mr. Johnson, though he was not, there or a police car on the side of him, his path was still blocked in front of him. He could not move. There was a parked car. There was a curb on the passenger side and the police officer's car blocked him in to his, on the driver's side. And so just like the officers, I mean, just like in Burton, Mr. Johnson was prevented from leaving and there wasn't a spotlight shown or flashed in Mr. Johnson's face. But he was questioned about traffic violations and he was prevented from leaving in an ordinary manner. Your Honor, we ask that this court reverse the district's ruling and send this case back to the district court. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement and that concludes our calendar for this morning. The court is in recess.